IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal Action No. 5:19-cv-00042 |
| v. ) | |
| ) | |
| EIGHT FIREARMS ) | By: Elizabeth K. Dillon |
| ) | United States District Judge |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

On August 20, 2019, the clerk of court entered default and three days later the court granted the government's motion for forfeiture of eight firearms. (Dkt. Nos. 6, 8.) Almost a year later, on June 10, 2020, Chris Miller filed a pro se motion for return of property, claiming that the seized firearms belong to him. (Dkt. No. 9.) For the reasons stated below, this motion is denied.

I.  BACKGROUND

**A.  Seizure of Weapons**

According to the affidavit in support of forfeiture, on December 7, 2018, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and local law enforcement executed multiple federal arrest and search warrants in Shenandoah County, Virginia, in relation to a large federal drug conspiracy investigation. (Affidavit of Christian Bockmann (Bockmann Aff.) ¶ 4, Dkt. No. 1-1.)

A co-conspirator of Merle Stephens was among those arrested and gave information about Stephens, who was wanted on a state arrest warrant and for selling large quantities of methamphetamine. The co-conspirator stated that Stephens had firearms in a white van and that he or she was present when Stephens traded methamphetamine in exchange for several of the

firearms in the white van. (*Id.*)  Later that day, Stephens was arrested on the state arrest warrant, and during the search incident to arrest, law enforcement found a quantity of methamphetamine and other illegal narcotics, a large quantity of United States currency, and a handgun. (*Id.*) Stephens later admitted during a Mirandized interview that he had purchased the handgun two weeks prior to his arrest. (*Id.* ¶ 9.)

Law enforcement located a white Chrysler minivan at the address where the co-conspirator stated Stephens was living at the time.  Firearms could clearly be seen inside the van through a side window.  The owner of the van gave verbal and written consent for law enforcement to search the van.  Officers recovered several firearms from the van. (*Id.* ¶ 5.)

Miller, who had purchased methamphetamine from and was a known associate of Stephens, claims that the seized firearms belong to him. (*Id.* ¶ 7–8.)  An ATF agent involved in the investigation, based on his knowledge of the investigation and the circumstances surrounding the seizure, believes that Miller is not the owner of any of the seized firearms. (*Id.* ¶ 10.)  The agent believes as much because: (1) the firearms were seized from the location where Stephens was residing; (2) the vehicle in which the firearms were located also contained Stephen's possessions; (3) Stephens admitted to shooting the firearms for target practice and that his fingerprints could possibly be on them; (4) a reliable co-conspirator admitted to being present when Stephens traded methamphetamine in exchange for firearms, and Stephens admitted to the co-conspirator that he is collecting firearms as a financial investment; (5) Miller is an unlawful user of methamphetamine addicted to controlled substances; and (6) Miller is prohibited from possessing firearms or ammunition, and if Miller were to be in possession of any firearms and/or

ammunition, he would be in violation of 18 U.S.C. § 922(g)(3) and the firearms would be subject to forfeiture pursuant to 18 U.S.C. § 924(d). (*Id.*)[1]

**B. Procedural History**

The government filed a verified complaint in this matter on May 28, 2019. (Dkt. No. 1.) The government caused notices of forfeiture to be personally served on various individuals, including Miller. (Notice & Publication, Dkt. No. 4.) The notice provided specific instructions for filing a claim and answer, including what each needed to contain, when it needed to be filed, and how to file it. (Notice of Forfeiture, Dkt. No. 11-1.) The notice of forfeiture was delivered to Miller on June 3, 2019. (Dkt. No. 4-2 at 2.) The government also posted a notice of forfeiture of the firearms on forfeiture.gov for at least thirty consecutive days beginning on May 30, 2019. (Dkt. No. 4.)

Because Miller did not file a timely claim or answer, the clerk entered default against "all persons claiming an interest in the defendant property," including Miller. (Dkt. No. 6.)

II. ANALYSIS

**A. The Federal Rules of Criminal Procedure Do Not Apply**

As an initial matter, Miller filed his motion for return of property under Rule 41(g) of the Federal Rules of Criminal Procedure. This, however, is a civil forfeiture proceeding, to which the rules of criminal procedure are inapplicable. Fed. R. Crim. P. 1(a)(1), (a)(5)(B) (stating that the Federal Rules of Criminal Procedure "govern the procedure in all criminal proceedings," specifically excluding "civil property forfeiture [proceedings] for violating a federal statute"); *United States v. Castro*, 883 F.2d 1018, 1020 (11th Cir. 1989) ("Defendant cannot use the criminal procedure device of [Rule 41(g)] to seek relief from a civil forfeiture proceeding.").

---

[1] Moreover, only one firearm (a Remington 870 express shotgun) was traced back to Miller as the original owner. (Bockmann Aff. ¶ 8.)

### B. Miller Lacks Standing

In a civil forfeiture action in rem, a claimant must file a claim and answer to the complaint under the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Claims.  *See* 18 U.S.C. § 983(a)(4); Fed. R. Civ. P. Supp. G(5).  Under these rules, a claim must be filed within thirty-five days of service of the complaint or thirty days of final publication of notice of the filing of the complaint, and the claimant must then file an answer to the complaint within thirty days after filing of his claim.  Fed. R. Civ. P. Supp. G(4)(b)(ii)(B), (G)(5)(a)(ii)(B).  "[P]otential claimants must strictly comply with Rule G in order to have statutory standing to challenge a forfeiture action."  *United States v. One 2011 Porsche Panamera*, 684 F. App'x 501, 506 (6th Cir. 2017); *United States v. Conolly*, 694 F. App'x 10, 13 (2d Cir. 2017) ("A person seeking to challenge forfeiture therefore lacks statutory standing if he or she has not filed a claim pursuant to Rule G(5).").

As discussed herein, Miller did not file a timely claim, and he therefore lacks standing.  In his motion, Miller claims that he did file a claim, but Miller filed a claim in the administrative forfeiture proceedings, which does not establish standing in this civil action.  A claim in an administrative forfeiture is "not a substitute for filing a verified claim in the judicial forfeiture action because summary administrative forfeitures and judicial forfeitures are separate proceedings."  *United States v. $7,000.00 in U.S. Currency*, 583 F. Supp. 2d 725, 735 n.15 (M.D.N.C. 2008); *see also Conolly*, 694 F. App'x at 13 ("Filing a notice with the DEA in response to a notice filed by that agency . . . is insufficient to satisfy standing in district court under the plain terms of Supplemental Rule G(5).").  Miller's administrative claim caused the ATF to refer the forfeiture to the U.S. Attorney's Office for judicial forfeiture proceedings.  Miller was then required to file a claim pursuant to Rule 5(G), which he failed to do.  Miller's

4

lack of standing is apparent, and his motion should be denied. *See United States v. Borromeo*, 945 F.2d 750, 752 (4th Cir. 1991) ("Courts consistently have required claimants to follow the language of the Supplemental Rules to the letter."); *United States v. Approximately $60,110.00 in U.S. Currency*, CIVIL NO. 3:19-cv-00635-GCM, 2020 WL 2199625, at *2 (W.D.N.C. May 6, 2020) ("Courts strictly enforce compliance with the Supplemental Rules in forfeiture cases, and until a claimant does so, he or she lacks statutory standing to contest the forfeiture.").[2]

## III. CONCLUSION

Based on the foregoing, it is HEREBY ORDERED that Miller's motion for the return of property (Dkt. No. 9) is DENIED.

Entered: December 4, 2020.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge

---

[2] Neither can construing Miller's motion as a motion to set aside default, Fed. R. Civ. P. 55(c), or as a motion for relief from a final judgment, Fed. R. Civ. P. 60(b), excuse the lack of statutory standing. *See, e.g.*, *United States v. $10,300.00 in U.S. Currency*, No. 10-CV-6103-CJS, 2015 WL 5693054, at *1 (W.D.N.Y. Sept. 28, 2015) (refusing to vacate entry of default because of lack of standing).